**Sylvester JOHNSON, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

**No. 1:01CV169–C.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 27, 2002.

Roger Wade Rizk, Charlotte, NC, for Plaintiff.

Ingrid Blackwelder Erwin, Nexsen, Pruet, Jacobs & Pollard, Greenville, SC, for Defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and defendant's cross Motion for Summary Judgment. In support of and in opposition to such motions, the respective parties have submitted memoranda of law and an administrative record via exhibits to their respective briefs. For the reasons discussed below, the court will grant defendant's Motion for Summary Judgment, deny plaintiff's Motion for Summary Judgment, and affirm the decision of the plan administrator.

## I. Background

### A. Plaintiff's Work History, Impairments, and Medical/Vocational Record

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974, "ERISA." Plaintiff was employed by AMP, Inc., ("AMP") as a materials handler and was covered by both short-term and long-term disability plans provided by AMP. AMP's long-term disability plan was administered by defendant herein, the "plan administrator." Plaintiff received short-term disability benefits from November 8, 1999, through November 19, 1999, and those benefits are not disputed.

The nature of plaintiff's claim of disability is an on-the-job neck injury and resulting surgery. He contends that defendant's denial of his long-term claim was improper and that he continues to suffer from quadri paresis as a result of spinal cord dysfunction from stenosis. It appears that in addition to the neck surgery, which occurred during the exclusion period, plaintiff also suffered from a back problem that existed and was treated after the period of exclusion closed.

Plaintiff was diagnosed with cervical spondylosis in August 1999 and ceased work on November 2, 1999. Coincidently, AMP closed its doors November 19, 1999, and terminated plaintiff's position. Plaintiff returned to work on November 19, 1999, and filed a claim for short-term disability, which was granted for the closed period of November 8 through the plant's closing on November 19.

Plaintiff underwent a posterior cervical laminectomy on December 17, 1999, and was discharged from his surgeon's care on April 25, 2000. At that point, plaintiff's surgeon opined that plaintiff's cervical spine was stable, decompression was excellent, and plaintiff had no weakness, reflex changes, or sensory loss that would suggest a need for further treatment.

Plaintiff has also suffered from a back problem, which first manifested itself in June 2000. This back problem, of which there is no evidence prior to the end of the elimination period in May 2000, is not relevant to plaintiff's claim for long-term disability benefits.

In addition, the note dated June 13, 2000, prepared by or for plaintiff's surgeon and clearing plaintiff to return to work on June 1, 2000, is of no consequence, inasmuch as the surgeon had not seen plaintiff after April 25, and the opinion contained in the note was not supported by additional medical findings. It is well within the

realm of reason for a plan administrator to disregard a physician's note where it is obvious that it is an attempt to manufacture a return-to-work date that would have provided benefits to the patient. This is especially appropriate where the uncontradicted medical record from the same physician indicates that the employee was undeniably fit for duty on an earlier date and no subsequent clinical findings were made.

Plaintiff was also interviewed by one of defendant's vocational case managers. In that interview on January 19, 2001, plaintiff stated that he stopped work because of his neck injury and surgery in December 1999; he did not return to work between December 1999 and June 2000 because the plant had closed; and he had not applied for Social Security disability because he wanted to return to work at some point in time.

Plaintiff's claim for long-term benefits was denied initially and upon formal administrative appeal. It appearing that the administrative record is complete and that all briefs have been filed, this matter is now ripe for resolution on the cross motions for summary judgment.

## II. Summary Judgment

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In this case, the parties have submitted cross motions for summary judgment, wherein each side contends that there are no issues for trial and that judgment may be rendered as a matter of law. Finding that the facts are adequately presented in the administrative record, that the court's review is limited to the administrative record that was before the plan administrator, and that no genuine issues of material fact exist, the court determines that summary judgment is an appropriate means to resolve the issues presented.

## III. The Benefits Decision

### A. Long–Term Disability Claim

Plaintiff is claiming entitlement to long-term disability benefits. He applied for and received short-term benefits for a closed period of disability, and receipt of those benefits is not in dispute. Under the terms of the long-term disability plan, a claimant is considered disabled when:

> during the Elimination Period ... the Insured Employee ... is:
>
> (1) continuously unable to perform the substantial and material duties of their regular occupation;
>
> (2) under the regular care of a physician other than himself/herself; and
>
> (3) not gainfully employed in any occupation for which he is or becomes

qualified by education, training or experience.

## B. Standard of Review of the Administrative Decision

■ Where a plan administrator is granted discretionary authority by the terms of the plan to determine eligibility or to construe the terms of the plan, the denial of benefits must be reviewed for abuse of discretion. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

> Under this deferential standard, the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently.

*Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 232 (4th Cir.1997); *Booth v. Wal–Mart Stores, Inc. Associates Health and Welfare Plan,* 201 F.3d 335, 342–43 (4th Cir.2000).

■ In this case, however, defendant has argued, and plaintiff has not countered, that the standard of review applicable under this particular plan is *de novo* review of the administrative record, because this particular plan provided no discretionary authority to determine eligibility for benefits or to construe terms of the plan. *See Firestone Tire and Rubber Co., supra,* at 115, 109 S.Ct. 948. Review of the substance of the plan reveals that no discretion is vested in the plan administrator to determine eligibility or construe plan terms. *De novo* review, as the name implies, requires "consideration of an issue as if it had not been decided previously." *United States v. George,* 971 F.2d 1113, 1118 (4th Cir.1992). However, *de novo* review requires consideration of evidence that was not presented to the plan administrator "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Quesinberry*

*v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1025 (4th Cir.1993). Under the terms of the plan, it was plaintiff's burden at the administrative level, as it is here, to prove that he was totally disabled, as defined by the policy.

## IV. *De Novo* Review

This court has considered all of the evidence contained in the administrative record and determined that no evidence outside that record is necessary to afford plaintiff adequate *de novo* review. In conducting this review, the court has considered the totality of the medical evidence, as well as the evidence developed by defendant administratively. Plaintiff simply has not presented evidence of total disability occurring within the period of exclusion.

■ In reaching this conclusion, the court has considered the June 2000 opinion letter of plaintiff's treating physician, which cleared plaintiff for a return to work *after* the end of the exclusionary period. It is obvious to this court that such letter cannot be fully credited because it (1) reaches a result of a return-to-work date that is wholly inconsistent with the same doctor's April 24, 2000, conclusions, which reflect contemporaneous clinical observations, and (2) is unsupported by any subsequent clinical findings. Indeed, the only logical conclusion is that the letter was solicited either by or on behalf of plaintiff for the sole purpose of obtaining benefits. As to the April 24, 2000, opinion of plaintiff's surgeon, there simply could be no clearer medical statement of a patient being able to return to gainful employment. That opinion would also lead a rational decision maker to determine that plaintiff was ready for work on April 25, 2000. *See* Transcript, at 34.

On the ultimate determination of "disability," courts, as well as disability adjudi-

cators, give little deference to the opinions of medical doctors, absent a showing of their vocational expertise and contemporaneous vocational findings; thus, the plan administrator quite properly ignored the vocational conclusions of plaintiff's doctor, which were made well after the elimination period expired and did not reference clinical findings. This court reaches a similar conclusion here.

While many doctors are willing to sign letters drafted by attorneys that the patient/client is completely disabled, those opinions carry little weight, and discussions concerning whether a doctor did or did not find a plaintiff to be disabled are not critical to decision. It is a doctor's medical findings, however, that are most helpful in determining what impairments are interfering with a plaintiff's ability to work.

Where medical opinions are based on clinical findings, such medical information is most informative on the issue of the severity of a plaintiff's impairments. To that end, it is an abuse of discretion to reject the medical opinions of a treating physician unless the adjudicator can point to persuasive contradictory medical evidence. *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir.1983).

> Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted ....

*Id.* at 187. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. *Id.* The opinion of a treating physician may be disregarded where it is inconsistent with clearly established contemporaneous medical records. *See* 20 C.F.R. § 404.1527(d)(4). In this case, it is plaintiff's own medical evidence that counsels that he was not disabled from performing the essential duties of his job as a materials handler as of the last day of the exclusionary period. It appears that the only residual of plaintiff's cervical surgery was clonus, which is simply muscle twitching. Plaintiff presented no evidence of the impact of his neck injury and surgery on his ability to work or on his activities of daily living. He has not satisfied his burden of proving that he was unable to perform the essential functions of his job as of the last day of the exclusionary period, and the evidence that has been presented is antithetical to his claim. Especially telling is the contemporaneous statement, memorialized by his doctor, that as of April 24, 2000, plaintiff would be looking for new work since his plant closed.

## IV. Conclusion

Having reviewed the administrative record *de novo*, it does not support plaintiff's claim for benefits, but does support the administrative decision. The court will deny plaintiff's Motion for Summary Judgment, grant defendant's Motion for Summary Judgment, and deny any award of benefits. A judgment reflecting such decision is entered simultaneously herewith.